BAPTISTE *v.* THE STATE, on the Relation of HATCHER and Another, Overseers of the Poor, &c.

The statute of 1831, requiring certain free negroes and mulattoes to give bond, &c., is not unconstitutional.

An appeal lies from the judgment of a justice of the peace, rendered in a case under that statute, to the Circuit Court.

A judgment by the justice, or by the Circuit Court on appeal, in such case, that the defendant give bond, &c., or in default thereof that he be removed,—is erroneous.

The judgment in such case, if against the defendant, should only be, in the first instance, that he give bond as the statute requires, describing it; and if the bond be not afterwards given, the overseers of the poor may either hire out the defendant for six months, on their own authority, or they may remove him out of the state, upon an order of the justice or the Court specifying the place to which he is to be taken, which must be the state where he was last legally settled.

May Term, 1840.

The Circuit Court on appeal, if the facts authorize it, may make the order of removal, but they cannot direct the justice to make it.

BAPTISTE
v.
THE STATE.

Thursday, May 28.

APPEAL from the *Jefferson* Circuit Court.

DEWEY, J.—The overseers of the poor for *Madison* township, *Jefferson* county, on the 7th of *February*, 1839, filed a complaint before a justice of the peace, representing that *George D. Baptiste*, a mulatto person, then was a resident of that township; that he came to this state since the first of *September*, 1831, and that he had not "given bond with security as is required by the first section of an act entitled 'An act concerning free negroes and mulattoes, servants and slaves,' approved *February* 10th, 1831." *Baptiste* was summoned to appear and show cause, if any he could, why he should not comply with the provisions of the aforesaid act; he appeared and pleaded not guilty. The justice, having heard the evidence, adjudged that *Baptiste* had come to this state since *September* 1st, 1831; that he had not given any bond; and that he should give bond with surety "as required by the first section of the aforesaid act, or, in default thereof, that he be removed from this state, by the overseers of the poor of the township aforesaid, to the state where he was last legally settled." *Baptiste* appealed to the Circuit Court, by which it was adjudged "that the judgment of the justice of the peace be affirmed;" and the Court ordered, "that the said justice issue his warrant to the overseers of the poor of *Madison* township, commanding them to remove the said defendant from this state to the state where he last legally resided, unless, within —— days, he should give bond and security as required by the first section of the act entitled "An act concerning free negroes and mulattoes, servants and slaves, approved *February* 10th, 1831." From this judgment *Baptiste* has appealed to this Court.

The counsel for the appellant has called in question the constitutionality of the law on which these proceedings are founded, and contends that it is null and void.

Since this cause was submitted, this point has been settled by this Court. In the case of *The State* v. *Cooper*, decided at the last term, we held that the statute of *February* the 10th, 1831, concerning free negroes, &c., is not so clearly

repugnant to the constitution as to authorize us to pronounce it a nullity.

Another objection against the correctness of the judgment of the Circuit Court has been urged, which must prevail; it is, that the judgment is unauthorized by the act itself.

The first section provides that no black or mulatto person, having come, or been brought, into this state since *September* 1st, 1831, shall be allowed to remain, unless he give bond in the manner prescribed. The second section prescribes, that if such person shall fail to comply with the provisions of the first section, it shall be the duty of the overseers of the poor in any township where he may be found, to apply to a justice of the peace for a summons calling before him such negro, or mulatto, to show cause why he should not comply with the provisions of the act; and if the defendant shall fail to give the bond and security required by the first section, after having been brought before the justice, it shall be the duty of the overseers to hire him out for six months, for the best price in cash that can be had—the avails of which hiring shall go into the county treasury, and be applied to the use of the person hired at the discretion of the overseers; or the overseers, at their option, shall remove such negro or mulatto without the jurisdiction of this state, in the same manner, and under the same rules and regulations, as are pointed out in the act for the relief of the poor. R. S. 1838, pp. 418, 19.

It becomes necessary to inquire, what power the foregoing provisions of this law confer upon justices of the peace, and overseers of the poor, over that class of people embraced by its rigorous enactments? The authority of the justice, in the first instance, is confined to summoning the negro or mulatto before him, on the application of the overseers, to show cause why he should not comply with the provisions of the act—that is, give the bond and security required by the first section. In this investigation the questions are, Did the defendant come into the state after the 1st of *September*, 1831? Has he given the requisite bond? If these matters are found against him, the justice is to adjudge that he give such a bond as the statute requires, describing it. Here the power of the justice ends, for the time. If the defendant fail to give the bond, the overseers of the poor are to make

choice of one of the alternatives imposed upon them,— that is, they are either to hire the defendant out for six months, or they are to remove him from the state. If they choose the former, they act upon their own authority independent of the justice; if they determine upon the latter, they must be governed by the regulations prescribed for the removal of paupers. These regulations require a justice's warrant or order, that the pauper be taken to the township, county, or state, where he was last legally settled. R. S. 1838, p. 434. That the warrant or order must designate that place by name, is evident from various features of the statute, — one of which is, that if the overseers are unable to ascertain and establish the last place of residence of the pauper, they are not authorized to remove him at all,—another is, that the overseers of the poor of the township or place, (if within this state,) to which the pauper shall be removed, under the warrant or order of the justice, shall receive him. R. S. 1838, pp. 434, 5. It is clear, therefore, we think, that no negro or mulatto who may be subject to the act of *February* the 10th, 1831, can be removed from this state without a warrant or order specifying the place to which he is to be taken, which must be the state where he was last legally settled.

The statute in question gives no right of appeal from the judgment of the justice to the Circuit Court; but we think the case comes within the general provision of the justice's act, authorizing appeals from all judgments rendered by those magistrates. The appeal stands in the Circuit Court as an original case, and that Court, on the trial of the merits, should render such a judgment as the justice should have rendered under like circumstances. The adjudication of the Circuit Court in this case, in the general language that the judgment of the justice "be affirmed," is irregular. But admitting it to be sufficiently explicit to be legal, and that it so adopts the judgment of the justice, as that we can act upon it as the judgment of the Circuit Court, it is still erroneous. The judgment is, that the defendant give bond, &c., or in default thereof that he be removed. The statute does not confer upon the justice, or the Circuit Court, the authority to decide, in the first instance, that the defendant be removed if he fail to give bond, &c. That is a matter which rests in the dis-

cretion of the overseers of the poor, who may think proper to hire him out, instead of removing him. The defendant may prefer one of these alternatives to the other, and the law has left him the poor privilege of taking the chance that the choice of the overseers may coincide with his wishes. Should the overseers determine to remove him upon his failure to give bond as adjudged by the justice, or the Circuit Court, the record should show that fact, and it will then be proper to make the order of removal, which must, as we have already seen, designate, by name, the state in which he was last legally settled, as the place to which he is to be taken. That part of the judgment of the Circuit Court, which directs the justice to issue an order of removal, is also unauthorized. That Court may pass such an order themselves if they think the facts authorize it, but the law does not empower them to direct the justice to do it.

As no objection was made either before the justice or in the Circuit Court to the validity of the complaint, on which *Baptiste* was summoned to appear before the justice, we have not considered whether the allegation that he had not "given bond with security as is required by the first section," &c. was sufficient to put him on his trial. Nor have we inquired whether the evidence, which is spread upon the record, justified a judgment against the defendant.

*Per Curiam.*—The judgment is reversed, and the proceedings subsequent to the appearance of the parties in the Circuit Court set aside, at the costs of the relators. Cause remanded, &c.

*S. C. Stevens*, for the appellant.

*J. L. White*, for the appellee.